O

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY FIRST CLASS MAIL. POSTAGE PREPAID, TO ~~ALL COUNSEL~~ pet (OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF RECORD IN THIS ACTION ON THIS DATE.

DATED: 2-9-15

DEPUTY CLERK

FILED
CLERK, U.S. DISTRICT COURT
FEB - 9 2015
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

ALVARO CUELLAR,
Petitioner,
vs.
T. BUSBY, Warden (A),[1]
Respondent.

Case No. CV 14-2943 RNB

MEMORANDUM DECISION AND ORDER THEREON

**BACKGROUND**

On March 29, 2011, a Los Angeles County Superior Court jury convicted petitioner of one count of continuous sexual abuse of a child under the age of fourteen. The trial court subsequently sentenced petitioner to state prison for a term of 12 years.

Petitioner appealed, raising two claims:

1. The trial court erred in denying petitioner's timely motion for self-representation, in violation of the Sixth Amendment to the United States Constitution.

---

[1] Acting Warden Busby is substituted for former Warden Gonzalez per Fed. R. Civ. P. 25(d).

2. The trial court erred in instructing the jury with CALCRIM No. 1110 because that instruction unconstitutionally negates the need for the jury to find all elements of the offense beyond a reasonable doubt.

On August 22, 2012, in an opinion certified for partial publication, the Court of Appeal rejected petitioner's claims and affirmed the judgment of conviction. Petitioner then raised the same two claims in a Petition for Review to the California Supreme Court, which was summarily denied without comment or citation to authority on November 14, 2012. Petitioner thereafter filed a petition for writ of certiorari in the United States Supreme Court, which was denied on April 15, 2013.

Petitioner did not file any state collateral challenges. His first collateral challenge was the pro se Petition for Writ of Habeas Corpus by a Person in State Custody that he lodged for filing herein on April 14, 2014. Petitioner is alleging the same two grounds for relief that he raised on direct appeal and in his ensuing Petition for Review.

Respondent has filed an Answer to the Petition and petitioner has filed a Traverse thereto. Thus, this matter now is ready for decision. For the reasons discussed hereafter, the Petition is denied.

## SUMMARY OF THE EVIDENCE PRESENTED AT TRIAL

Since petitioner is not challenging the sufficiency of the evidence to support his conviction, the following summary of the evidence presented at trial is taken from the "Factual and Procedural Summary" section of the California Court of Appeal decision on direct appeal.[2]

---

[2] The Court notes that Ninth Circuit cases have accorded the factual (continued...)

*The victim in this case, as a child, was a member of defendant's household. We refer to her as "V". V was born in May 1985. She lived with her mother and her younger brothers in various residences in east Los Angeles. Beginning when she was five years old, defendant sexually molested her. His acts of molestation increased in seriousness over the years, progressing from kissing and touching her vaginal area to oral copulation, pressing his penis on her vagina, masturbating and ejaculating on her body, and other sexual acts. The molestation generally occurred during the day, when V's mother (defendant's wife) was away from the home, working. The more serious acts, including oral copulation, began when V was nine or ten years of age, and continued through her fourteenth year for a period of some 12 years. The last act was committed when she was seventeen years old. Defendant typically apologized for his conduct, saying that he was sick but could not stop. He asked V not to tell her mother because her mother would be upset and would not understand. As V got older she increasingly resisted defendant's acts, and eventually they stopped occurring. The last act occurred in 2003. At a minimum, 12 lewd and lascivious acts were committed by defendant against V between her fifth and thirteenth birthdays. When she was nine or ten years old, these acts occurred one or two times a month.*

*For a long time, V did not report any of this conduct to her mother or anyone*

---

[2](...continued)

summary set forth in a state appellate court decision a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1), which a party may rebut only by clear and convincing evidence that the facts were otherwise. See, e.g., Ybarra v. McDaniel, 656 F.3d 984, 989 (9th Cir. 2011), cert. denied, 133 S. Ct. 424 (2012); Brown v. Horell, 644 F.3d 969, 972 (9th Cir.), cert. denied, 132 S. Ct. 593 (2011); Slovik v. Yates, 556 F.3d 747, 749 n.1 (9th Cir. 2009); Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009); Tilcock v. Budge, 538 F.3d 1138, 1141 (9th Cir. 2008), cert. denied, 555 U.S. 1112 (2009); Mejia v. Garcia, 534 F.3d 1036, 1039 n.1 (9th Cir. 2008), cert. denied, 555 U.S. 1117 (2009). Here, petitioner has not purported to overcome the presumption of correctness accorded to the Court of Appeal's factual summary of the evidence presented at trial.

*else, including the therapist she was seeing. While in college she met a boyfriend and began a relationship. She told her boyfriend about defendant's conduct, and he urged her to report the conduct to law enforcement authorities. V finally did so. This led to a sheriff's detective asking defendant to come to a sheriff's station for an interview. He did so, met with the Special Victims Bureau, and submitted to an interview. During that interview he confessed to the substance of his sexual conduct with V. The interview was tape recorded, and the recording was played to the jury. The jury also was given a transcript of the recording.*

. . .

*Defendant testified at trial. He admitted making the incriminating statements to the detective but explained that a social worker, who had come into the case with respect to one of V's brothers, told defendant that things would go better for him if he cooperated with the investigation, and that doing so would help hold his family together. He "went along" with those suggestions and admitted the sexual conduct. On the stand, he denied all acts of molestation against V.*

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Under the AEDPA, the "clearly established Federal law" that controls federal habeas review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); see also Carey v. Musladin, 549 U.S. 70, 74, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006).

Although a particular state court decision may be both "contrary to" and "an unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings. See Williams, 529 U.S. at 391, 413. A state court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. See Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam); Williams, 529 U.S. at 405-06. When a state court decision adjudicating a claim is contrary to controlling Supreme Court law, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)." See Williams, 529 U.S. at 406. However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." See Early, 537 U.S. at 8.

State court decisions that are not "contrary to" Supreme Court law may be set aside on federal habeas review only "if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law, or based on 'an unreasonable determination of the facts.'" See Early, 537 U.S. at 11 (citing 28 U.S.C. § 2254(d)) (emphasis added). A state-court decision that correctly identified the governing legal rule may be rejected if it unreasonably applied the rule to the facts of a particular case. See Williams, 529 U.S. at 406-10, 413 (e.g., the rejected decision may state the Strickland standard correctly but apply it unreasonably); Woodford v. Visciotti, 537 U.S. 19, 24-27, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam). However, to obtain federal habeas relief for such an "unreasonable application," a

petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable." Visciotti, 537 U.S. at 24-27; Williams, 529 U.S. at 413. An "unreasonable application" is different from an erroneous or incorrect one. See Williams, 529 U.S. at 409-10; Visciotti, 537 U.S. at 25; Bell v. Cone, 535 U.S. 685, 699, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). Moreover, review of state court decisions under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." See Cullen v. Pinholster, - U.S. -, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011).[3]

The same standard of objective unreasonableness applies where the petitioner is challenging the state court's factual findings under 28 U.S.C. § 2254(d)(2). See Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."); Bruce v. Terhune, 376 F.3d 950, 954 (9th Cir. 2004); Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir.), cert. denied, 543 U.S. 1038 (2004). In Taylor, the Ninth Circuit observed that "[s]uch a challenge may be based on the claim that the finding is unsupported by sufficient evidence, . . . that the process employed by the state court is defective, . . . or that no finding was made by the state court at all." See id. at 999 (internal citations omitted). In order to conclude that a state court finding was unsupported by substantial evidence in the state court record, the reviewing federal habeas court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." See id. at 1000. In order to conclude that the state court fact-finding process

[3] Thus, the Court's findings hereafter that habeas relief is not warranted on either of petitioner's claims under § 2254(d)(1) is dispositive of petitioner's request for an evidentiary hearing on his claims.

was defective in some material way, the reviewing federal habeas court "must be satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." See id. Examples in this latter category are where the state court "makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence"; where the state courts "plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim"; and where the state court "has before it, yet apparently ignores, evidence that supports petitioner's claim." See id. at 1001. "Once the state court's fact-finding process survives this intrinsic review . . . the state court's findings are dressed in a presumption of correctness . . . ." Id. at 1000.

As the Supreme Court explained in Harrington v. Richter, - U.S. -, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011):

> "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here [i.e., where there was no reasoned state-court decision], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."

Furthermore, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87.

Here, claims corresponding to the two grounds for relief being alleged in the Petition were raised by petitioner on direct appeal and denied by the California Court of Appeal in a reasoned decision. Those same two claims were then presented in

petitioner's Petition for Review, which the California Supreme Court denied. Accordingly, for purposes of applying the AEDPA standard of review here to petitioner's claims, the California Court of Appeal decision on direct appeal constitutes the relevant state court adjudication on the merits. See Berghuis v. Thompkins, 560 U.S. 370, 380, 130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010) (where state supreme court denied discretionary review of decision on direct appeal, the decision on direct appeal is the relevant state-court decision for purposes of the AEDPA standard of review).

## DISCUSSION

### I. Habeas relief is not warranted with respect to petitioner's claim that the trial court violated his Sixth Amendment right to self-representation.

Ground 1 of the Petition is directed to the trial court's denial of a motion by petitioner to represent himself that petitioner made on the day his trial was set to commence.

In Faretta v. California, 422 U.S. 806, 832, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the Supreme Court held that a criminal defendant has a federal constitutional right of self-representation. But, as the Supreme Court recognized in deciding Faretta, the right to self-representation is not absolute. See Faretta, 422 U.S. at 835. Not only must a defendant "voluntarily and intelligently" elect to conduct his own defense, but most courts require that a defendant make the request in a timely manner. See Martinez v. Court of Appeal, 528 U.S. 152, 161-62, 120 S. Ct. 684, 145 L. Ed. 2d 597 (2000).

For many years, the California courts and the Ninth Circuit applied different standards in determining the timeliness of a request for self-representation. The California Supreme Court has held that, in order for a defendant to invoke his federal constitutional right of self-representation, the defendant must assert that right "within a reasonable time prior to the commencement of trial." See People v. Windham, 19

Cal. 3d 121, 127-28, 137 Cal. Rptr. 8, 560 P.2d 1187, cert. denied, 434 U.S. 848 (1977); see also, e.g., People v. Frierson, 53 Cal. 3d 730, 742, 280 Cal. Rptr. 440, 808 P.2d 1197 (1991), cert. denied, 502 U.S. 1061 (1992); People v. Burton, 48 Cal. 3d 843, 852, 258 Cal. Rptr. 184, 771 P.2d 1270, cert. denied, 494 U.S. 1039 (1990). Under the California standard, a request for self-representation made on the day trial is set is not considered timely. See, e.g., Burton, 48 Cal. 3d at 852-53; People v. Moore, 47 Cal. 3d 63, 79-81, 252 Cal. Rptr. 494, 762 P.2d 1218 (1988), cert. denied, 490 U.S. 1095 (1989); People v. Rudd, 63 Cal. App. 4th 620, 626, 73 Cal. Rptr. 2d 807 (1998); People v. Douglas, 36 Cal. App. 4th 1681, 1689, 43 Cal. Rptr. 2d 129 (1995).

In contrast, prior to the enactment of the AEDPA, the Ninth Circuit applied a "bright line" rule to timeliness questions concerning requests for self-representation: A request to proceed pro se was timely if made before the jury was empaneled, unless it was shown to be a tactic to secure delay. See, e.g., Moore v. Calderon, 108 F.3d 261, 264 (9th Cir.), cert. denied, 521 U.S. 1111 (1997); Armant v. Marquez, 772 F.2d 552, 555 (9th Cir. 1985), cert. denied, 475 U.S. 1099 (1986); Fritz v. Spalding, 682 F.2d 782, 784 (9th Cir. 1982).

However, in Moore, the Ninth Circuit recognized that the enactment of the AEDPA altered the Ninth Circuit "gloss" that had been "added" to the federal courts' determination of Faretta claims in habeas corpus proceedings. See Moore, 108 F.3d at 264. Under 28 U.S.C. § 2254(d), as amended by the AEDPA,"[a] state court decision may not be overturned on habeas review . . . because of a conflict with Ninth-circuit based law, but rather a writ may issue only when the state court decision is 'contrary to, or involved an unreasonable application of,' an authoritative decision of the Supreme Court." See id.

As the Ninth Circuit further recognized in Moore, the only Supreme Court decision to discuss the timeliness of a request for self-representation is the Faretta decision itself. The Ninth Circuit construed Faretta as holding that a request for self-

representation is timely if made "weeks before trial" or "well before the date of trial." Thus, the "clearly established federal law," as determined by the Supreme Court, is that a criminal defendant has an unqualified right of self-representation only if he makes the request weeks before trial or well before the date of trial. See Moore, 108 F.3d at 265; see also Marshall v. Taylor, 395 F.3d 1058, 1061 (9th Cir.) ("Because the Supreme Court has not clearly established when a Faretta request is untimely, other courts are free to do so as long as their standards comport with the Supreme Court's holding that a request 'weeks before trial' is timely."), cert. denied, 546 U.S. 860 (2005).

Here, petitioner's request to represent himself was not made "weeks before" or "well before" the date of trial. Rather, as noted by the California Court of Appeal:

> "By the time the request was made in this case, [petitioner] had been represented by counsel for over four months, both sides had announced ready for trial, the case had just been sent out to a trial department for trial, and a jury venire had been summoned and was assembling outside the courtroom. And, presumably, witnesses had been summoned for this short trial and also were present and ready to proceed. No justification was presented for the request being made as late as it was."[4]

The California Court of Appeal concluded that, under these circumstances, the trial court "was well within its discretion in denying the request" and this Court has no basis for finding that the Court of Appeal's rejection of petitioner's Faretta claim either was contrary to or involved an objectively unreasonable application of clearly

---

[4] Although petitioner disputes that his Faretta motion was untimely, citing pre-AEDPA Ninth Circuit cases, he has not purported to meet his burden of rebutting by clear and convincing evidence these factual findings underlying the Court of Appeal's rejection of his claim.

established Supreme Court law. See, e.g., Stenson v. Lambert, 504 F.3d 873, 884-85 (9th Cir. 2007) ("The Supreme Court has never held that Faretta's 'weeks before trial' standard requires courts to grant requests for self-representation coming on the eve of trial. The trial court's determination that Stenson's request to proceed pro se was untimely is not objectively unreasonable under AEDPA."), cert. denied, 555 U.S. 908 (2008); Marshal, 395 F.3d at 1062 ("In the absence of clear Supreme Court precedent defining when a Faretta request becomes untimely, the California Court of Appeal was free to determine that under California's Windham rule, Marshall's request on the day of trial was untimely.").

## II. Habeas relief is not warranted with respect to petitioner's instructional error claim.

Ground 2 of the Petition is an instructional error claim.

### A. Background

Petitioner was charged with continuous sexual abuse of a child in violation of Cal. Penal Code § 288.5(a). The jury was instructed in accordance with the version of CALCRIM No. 1120 then in effect:

> "The defendant is charged in Count One with continuous sexual abuse of a child under the age of 14 years in violation of Penal Code section 288.5(a).
>
> "To prove that the defendant is guilty of this crime, the People must prove that:
>
> 1. The defendant lived in the same home with a minor child;
> 2. The defendant engaged in three or more acts of lewd and lascivious conduct with the child;
> 3. Three or more months passed between the first and last

acts;

AND

4. The child was under the age of 14 years at the time of the acts.

"Lewd or lascivious conduct is any willful touching of a child accomplished with the intent to sexually arouse the perpetrator or the child. *The touching need not be done in a lewd or sexual manner.* Contact with the child's bare skin or private parts is not required. Any part of the child's body or the clothes the child is wearing may be touched. Lewd or lascivious conduct also includes causing a child to touch his or her own body or someone else's body at the instigation of a perpetrator who has the required intent.

"Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.

"You cannot convict the defendant unless all of you agree that he committed three or more acts over a period of at least three months, but you do not all need to agree on which three acts were committed.

"Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or child is not required for lewd or lascivious conduct." (Italics added.)

On appeal, petitioner claimed that the trial court erred in giving this instruction because the sentence italicized above negated an essential element of the offense from the jury's consideration (i.e., the need for the touching to have been done in a lewd manner), in violation of petitioner's Sixth Amendment right to a jury trial and his

Fifth and Fourteenth Amendment rights to due process of law.[5] In rejecting petitioner's instructional error claim, the Court of Appeal noted that the sentence "apparently was intended as a transcription of the long-established rule that touching of a sexual organ is not required for violation of the statute"; that the phrase "lewd and lascivious act" had been "expansively defined to include any contact with the defendant's body and did not require that the touching be to an intimate part of the body"; and that the California Supreme Court had held that it was enough that the touching occur with the requisite intent. The Court of Appeal acknowledged that the challenged sentence, taken by itself, was capable of the construction that petitioner suggested. It found the sentence "unfortunate and possibly confusing," and it urged the Judicial Council's Advisory Committee on Criminal Jury Instructions to revise the instruction and remove any arguable ambiguity.[6]

However, the Court of Appeal concluded that, taken as a whole, the instruction did not mislead the jury and that any error in the instruction was harmless. It reasoned as follows:

> "First, virtually all of the touching described in the testimony was sexual, rather than incidental, in nature. And the evidence of defendant's guilt was overwhelming. Besides the thorough testimony of the victim, the jury had before it defendant's confession. "A confession is like no other evidence" in its force and effect. (Arizona v. Fulminante (1990) 499 U.S. 279, 296, 111 S. Ct. 1246, 113 L. Ed. 2d 302.) Against that, the jury had only defendant's testimony that, while

---

[5] Although petitioner's Opening Brief on Appeal, excerpts from which are attached to the Petition herein, also challenged CALCRIM No. 1110, that instruction was not given at petitioner's trial.

[6] Subsequently, the California Judicial Council did revise the instruction by removing the sentence criticized by the Court of Appeal. See CALCRIM No. 1120 (revised February 2013).

he made the inculpatory statements to the detective, he did so because a social worker intimated that things would go better for him if he cooperated, and he was trying to cooperate. That explanation was presented to the jury, which understandably did not credit it.

"Nevertheless, the instruction might have been prejudicial if the prosecutor had tried to capitalize on its language to argue that defendant was guilty even if his touching of V was innocent. (See People v. Guiton (1993) 4 Cal. 4th 1116, 1129, 17 Cal. Rptr. 2d 365, 847 P.2d 45 [hypothetically, in a case in which defendant was tried on two alternative theories only one of which was supported by substantial evidence, reversal may be required if prosecutor stressed only the invalid ground].)

"Here the opposite occurred. Addressing the paragraph of the instruction attacked here, the prosecutor argued that 'technically, if you have somebody who testifies that as a child somebody touched her on the shoulder, and if we can prove that that touching was done with the required intent, that would be sufficient to make the finding that that person committed a lewd or lascivious act, if we can prove that intent.' But here, the prosecutor quickly added, there was far more. '[W]here he touches her, and how he touches her, and what he does is what's important, and it shows the intent because the touching is on her private part, the touching includes placing his mouth on her vagina. The touching includes rubbing his penis against her vagina. [¶] Clearly, there's no other reasonable explanation as to why he's doing this other than the fact that he has the required intent.'"

B. Analysis

The clearly established Supreme Court law pertaining to jury instructions is

summarized in Middleton v. McNeil, 541 U.S. 433, 437, 124 S. Ct. 1830, 158 L. Ed. 2d 701 (2004):

> In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process. A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

See also Waddington v. Sarausad, 555 U.S. 179, 191, 129 S. Ct. 823, L. Ed. 2d (2009); Estelle v. McGuire, 502 U.S. 62, 72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); Boyde v. California, 494 U.S. 370, 380, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990)).

Here, for the same reasons the California Court of Appeal concluded that, taken as a whole, the instruction did not mislead the jury and that any error in the instruction was harmless--virtually all of the trial testimony in the case described touching that was sexual, rather than incidental, in nature; the evidence of petitioner's guilt was overwhelming and included his recorded confession; and the prosecutor did not argue to the jury that petitioner would have been guilty even if his touching of the victim had been innocent, but instead argued that petitioner touched the victim with the requisite intent, the Court finds that there is no reasonable likelihood that the jury applied CALCRIM No. 1120 in a manner that violates the Constitution. It follows that petitioner is not entitled to habeas relief on this instructional error claim under

the deferential AEDPA standard of review. See Sarausad, 555 U.S. at 192-93 (holding that, even if challenged instruction regarding the requisite mental state for accomplice liability was ambiguous, habeas relief was not warranted under the AEDPA standard of review where the prosecutor had argued the defendant had acted with the requisite knowledge, there was no evidence of ultimate juror confusion, and the evidence supporting the defendant's knowledge was legally sufficient to convict him).

**ORDER**

IT THEREFORE IS ORDERED that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: February 6, 2015

ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE